James T. Towe
TOWE LAW OFFICES
502 West Spruce
P.O. Box 7826
Missoula, MT 59807
Telephone: (406) 829-1669
Facsimile: (406) 327-1518

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| NORMAN L. BROWN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>WATCO COMPANIES, INC., a Kansas corporation, and MISSION MOUNTAIN RAILROAD, INC., an Idaho corporation,<br><br>　　　　　　Defendants. | Cause No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I. JURISDICTION AND VENUE

1. The plaintiff, Norman L. Brown, was an employee performing work for the above-named railroad defendants until after he was injured and later fired because of his injuries. Norm Brown was the general manager for Mission Mountain Railroad (MMR), working in Columbia Falls, Montana. He was supervised by MMR and Watco personnel in Idaho and others from Watco's

headquarters in Pittsburg, Kansas.  As the general manager, Norm Brown was ultimately required to perform the work of a track laborer, track inspector, locomotive engineer, locomotive conductor, and the related physical labor demands of these jobs.

    2.  Norm Brown's injuries and damages were caused, in whole or in part, by the defendants violations of duties imposed by the Federal Employers' Liability Act (FELA), 45 U.S.C. §51, et. seq and the Locomotive Inspection Act (LIA- formerly the Boiler Inspection Act), 49 U.S.C. §20701, et. seq (formerly codified at 45 U.S.C. §§1-43).  The jurisdiction of this Court is based upon the FELA.

    3.  Norm Brown is a citizen and resident of Montana, currently living in Columbia Falls, Montana.

    4.  The defendant, Watco Companies, Inc., is a Kansas corporation.  At all pertinent times to this case, Watco was engaged in the business of owning, maintaining, managing and operating a line and system of railroad involved in interstate commerce and which included work in the state of Montana.  Watco's agents and employees were directly involved in the conduct alleged in this Complaint.

    5.  The defendant, Mission Mountain Railroad, Inc., is an Idaho corporation engaged in the business of owning, maintaining, and operating a line and system

of railroad in interstate commerce which extended in part in the states of Idaho and Montana.

6. The defendant, Watco Companies, Inc., is and was at all pertinent times the parent corporation of the defendant Mission Mountain Railroad, Inc. References to Defendants encompass both of the named Defendants whether acting alone, in concert, and also encompass Watco Companies doing business as the Mission Mountain Railroad and MMR doing business as Watco or in Watco's interests.

7. At all times pertinent to this case, the defendants were common carriers engaged in interstate transportation and commerce.

## II.  COUNT ONE ACUTE INJURY LOCOMOTIVE INSPECTION ACT CLAIM

8. Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

9. On January 19, 2010, while in the course of his employment and working for the defendants, Norm Brown suffered injuries to his lumbar spine while working on an 85 pound remote control device or box that was suspended from a makeshift unsecured hoist on a locomotive that was in use on the railroad's main line track in Columbia Falls, Montana.

10. In violation of duties imposed by the Locomotive Inspection Act, (LIA) the defendants made alterations and additions to a locomotive by mounting an unsecured lifting device or hoist on the side of the front handrail. Defendants instructed Norm Brown to mount the 85 pound remote control box onto the locomotive railing several feet above the locomotive platform.

11. Norm Brown was instructed to use the hoist that was designed by Defendants to perform this task.

12. The hoist or lifting device lacked any mechanism to ensure that it was safe and secure. On January 19, 2010, following directions from Defendants to mount the remote control device to the locomotive's front rail, Norm Brown used the hoist to lift the box in order to attach it to the railing. While the box was being suspended, the box was bumped by his co-worker or otherwise swung away because the hoist was not safely secured. Norm Brown instinctively reached out to prevent it from falling or getting damaged. During this process, his back froze or locked up. He experienced severe low back pain, and pain radiating down his left leg. He has been diagnosed with a herniated intervertebral disc at L4-5 and has not been physically able to return to his previous job.

13. Under 49 U.S.C. § 20701, "a railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender

and its parts and appurtenances -

    (1) are in proper condition and safe to operate without unnecessary danger of personal injury;

    (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

    (3) can withstand every test prescribed by the Secretary under this chapter."

    14.  LIA violations may be established by failures to comply with the general duties imposed by the statute and by regulations promulgated by the Federal Railroad Adminstration.

    15.  49 C.F.R. § 229.45 requires that "[a]ll systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train.  These conditions include:  insecure attachment of components, . . . and improper functioning of components."

    16.  Defendants violated the LIA by providing a locomotive that was not safe to operate without unnecessary danger of personal injury.  Altering a locomotive in a way that makes its use unsafe violates the Act and the regulations.  The systems and components were not properly secured or safe.  Norm Brown incorporates the additional facts below relative to his LIA claims.

## III. COUNT TWO ACUTE INJURY FELA CLAIM

17. Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

18. Defendants, in addition to violating the LIA, and in the alternative, violated non-delegable duties imposed by the FELA by, among other things, failing to provide a safe workplace, safe tools and equipment, adequate manpower or assistance, and appropriately safe work methods, practices, or training.

19. Norm Brown was hired as the general manager for the Mission Mountain Railroad in the fall of 2004.  Mission Mountain Railroad purchased part of and/or leased part of the BNSF's line from Eureka to Stryker and Columbia Falls to Kalispell.  Norm Brown was told that he would have an adequate number of workers for several train crews, as well as laborers, clerks, and a mechanic.

20. By 2009, Defendants had significantly reduced the number of workers.  They also decided to institute a remote control locomotive operation due, in part, to the reduced manpower.  This program, according to Defendants, would require only one person to run the locomotives and would, therefore, save money.

21. Norm Brown voiced safety related concerns about the program, including that it was not safe to operate locomotives on tracks in northwestern Montana with only one person.  He later voiced concerns that it required the use of

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                                          **Page 6**

a remote control box device placed on the platform of the locomotive that was heavy and awkward to lift.

22.  During the initial stages of the remote control program, Defendants provided a locomotive with a remote control device that was safely installed inside the locomotive so that workers would not have to lift and move a remote control box device from one locomotive to another.

23.  Eventually, however, Defendants took the remote control locomotive to another location.  They then chose to use a remote control box device manufactured by Control Chief which could be moved from one locomotive to another, a practice that was deemed economically beneficial to Defendants.  The box, however, weighed about 85 pounds.  It would have to be manually lifted onto the front platform of locomotives where it is attached to the locomotive so the locomotive can be operated by a remote control device.  The box, ordinarily, sits flat on its back on the platform on the front of the locomotive.

24.  Norm Brown initially requested that the defendants provide a smaller sized suitcase style remote control unit which is much lighter, easier to move, and could be put inside the locomotives without the need for heavy and awkward lifts. Norm Brown also voiced concerns about having to lift and maneuver the heavy and awkward 85 pound unit, sometimes by himself, and at times during poor

weather conditions.

25. Defendants insisted on using a remote control device that could be mounted outside on the front of the locomotives.

26. Defendants then chose to modify the box device so that it could be mounted vertically and attached to the top handrail on the front of the locomotive, making the lift much higher than if the box was laid flat on its back on the platform. Defendants, thereafter, required Norm Brown to design a bracket system which would allow the box to be mounted to the rail in this fashion.

27. Norm Brown continued to voice his concerns but nonetheless followed orders and asked a local company to fabricate J-hooks to attach to the rail on the locomotive. Metal bars would then be attached to the back of the box so that the box could be set in the J-hooks on the locomotive. Norm Brown continued to voice concerns about the heavy and awkward lifts because he alone, and sometimes one other person, had to lift the cumbersome 85 pound box a considerable distance overhead, causing pain in Norm Brown's shoulders and spine.

28. After Norm Brown continued to voice concerns, Defendants wrote him up for discipline for not taking "ownership" of the locomotive remote control operation. Defendants also removed a boom truck which had a secure crane or

hoist that could have been used to mount the box onto the locomotive.

29.  Defendants later decided to fabricate a lift or hoist and a pole in which the hoist could sit which they attached to the locomotive.  Norm Brown again voiced safety concerns about this.

30.  In the fall of 2009, and into January of 2010, Defendants continued to have problems with the remote control box device because it did not function safely or properly.  Instead of hiring a two man crew or additional help to run the locomotives, Defendants insisted that another replacement remote control device be used.

31.  By January, 2010, Norm Brown was provided with a new remote control box.  He and his co-worker initially installed the new box flat on its back on the front platform of the locomotive.  Defendants, however, insisted that the device be lifted higher and attached to the handrail.

32.  Following orders, on January 19, 2010, Norm Brown, and a co-worker, used the homemade hoist in order to mount the bars to the new remote control box and set it in the J-hooks on the handrails of the locomotive.  During this process, and because the hoist or lifting device did not have a lock or anything to prevent it from swinging, the 85 pound box swung away.  Norm Brown instinctively tried to grab the box, suffering back injuries as explained above.

33. In summary, based on the facts above, the defendants' negligence consisted of failing to provide adequate manpower, reasonably safe locomotive remote control operations, adequately safe tools and equipment, failing to design and follow safe work practices, failing to provide adequate training, and generally failing to provide a reasonably safe workplace.

34. Norm Brown followed directions and orders from the defendants and was not negligent.

35. Norm Brown did not do anything careless or add new dangers to any conditions that the defendants negligently created and permitted to exist.

36. As a result of Defendants' absolute liability under the LIA and negligence under the FELA, Mr. Brown sustained the injuries and damages set forth below caused, in whole or in part, by the defendants.

## IV.  COUNT THREE
## FELA AND LIA CLAIMS FOR CUMULATIVE TRAUMA

37. Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

38. Both before and after the acute injury above, Defendants assigned Norm Brown to perform work tasks in violation of the LIA and duties imposed by the FELA.

39. Under the LIA, Defendants were obligated to provide locomotives with adequately safe and secure seats and components. Before and after Norm Brown was injured on January 19, 2010, Defendants, however, provided non-compliant locomotives.

40. Norm Brown was provided with locomotives with defective or dangerous seats or that were unsafe due to their age and condition. The remote control devices or remote control units frequently failed. The locomotives had insecure, bent, loose, or broken seats. Norm Brown experienced excessive rocking motion based on their worn out condition as well as poor track conditions.

41. Defendants continued to require Norm Brown to operate locomotives in these conditions after he had notified them of his back injuries and that the jobs they were requiring him to perform were hurting his back.

42. During his tenure, the defendants also negligently assigned Norm Brown to perform heavy lifting and other tasks that involved repetitive lifting, bending, and twisting.

43. Over the years that Defendants employed Norm Brown, he was assigned to extremely physically stressful jobs which placed unsafe stresses on his spine including, but not limited to: working in extremely awkward positions; operating rough-riding vehicles and equipment; getting on and off moving

equipment; lifting and carrying knuckles; throwing switches; working in poorly maintained railroad yards; lifting and working with heavy railroad ties and rails; maneuvering 55 gallon drums of oil; lifting and maneuvering the 85 pound remote control device; manually removing spikes with claw bars; and replacing spikes without adequate assistance or other power tools and equipment.

44.  Before Norm Brown was injured, Defendants removed a boom truck that he used to help with heavy lifting, requiring additional heavy and awkward lifting, including lifting the remote control device above and other heavier objects.

45.  Cutbacks over the years required increased manual labor duties that Norm Brown had to perform and that were beyond what he was promised and expected when he was hired as the general manager.

46.  Defendants knew or should have known that cumulative damage to the spine can occur from heavy lifting, bending, and twisting activities as well as operating worn out locomotives.  Defendants knew or should have known that reasonable safety efforts, maintenance, tool selection, and other methods could have been implemented to prevent injuries.

47.  In summary, by assigning and requiring Norm Brown to perform unsafe work tasks and activities, Defendants negligently failed to provide him with a safe workplace, safe work practices, and safe tools or equipment for performing the

work. This negligence and statutory violations contributed, at least in part, to the degeneration of Norm Brown's spine and to his injuries.

## V.  COUNT FOUR STATE LAW MISMANAGEMENT CLAIMS

48. Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

49. Under § 39-2-703, MCA, a railroad company which commits acts of negligent or intentional mismanagement against railroad employees is responsible for all damages caused thereby.

50. After Norm Brown reported that he was injured to the appropriate managers for Defendants, he was subjected to a pattern of harassment and intimidation. He was accused of doing things that were not true, accused of violating safety rules, threatened, and later fired on grounds that were inaccurate and did not justify firing him anyhow. This type of conduct is a direct violation of Montana law, is actionable, and justifies actual and punitive damages. *See Winslow v. MRL*, 2000 MT 292, 302 Mont. 289, 16 P.3d 992.

51. Defendants have engaged in a pattern of terminating or disciplining workers who have sustained reportable injuries.

52. After Norm Brown reported his injuries, he was improperly accused of filing a personal injury report in order to cover up his own alleged rule violation

and was threatened that he would be fired.  He was harassed and intimidated by company managers by subsequent job assignments, efforts to discipline him, misstatements and accusations that were not true, being deprived of company benefits that he was eligible to receive due to his injuries, and ultimately by being fired.

53.  As a result of Defendants' violations of the mismanagement statute, Norm Brown has suffered past and future economic losses and mental distress, humiliation, and anguish, and seeks punitive damages.

## VI.  COUNT FIVE RETALIATORY DISCHARGE

54.  Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

55.  A railroad company which retaliates against a railroad worker by firing him or her on account of an injury is subject to all damages caused thereby, including punitive damages.  Therefore, in addition to violating § 39-2-703, the defendant is guilty of retaliatory discharge or discharge in violation of public policy which prohibits discipline or discharge for reporting a work injury.

## VII.  COUNT SIX PUNITIVE DAMAGES RE:  STATE LAW CLAIMS

56.  Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

57. Under Mont. Code Ann. §§ 27-1-220 and 221, a jury may award, in addition to compensatory damages, punitive damages for the sake of example and for punishing a defendant.  Punitive damages are recoverable when the defendant is guilty of either actual fraud or actual malice.

58. In firing Norm Brown in retaliation for filing an injury report, harassing him afterwards, and for other unlawful motives, Defendants are guilty of both actual fraud and actual malice and, therefore, subjected to punitive damages which Norm Brown requests the jury to award for the purposes of punishment, to set an example, and to deter this from happening to anyone else.

## VIII.  REQUEST FOR RELIEF

59. Norm Brown repleads and incorporates by reference all of his allegations set forth in the above paragraphs.

60. As a result of the conduct set forth above, Norm Brown has suffered severe physical injuries to his spine, pain, limitations and the loss of his job.

61. **WHEREFORE**, Norm Brown, requests that the Court and jury award all damages that are reasonable and necessary to compensate him for his injuries and damages including:  medical costs and expenses; loss of earnings and lost earning capacity; loss of household services; diminished quality of life; physical and mental pain and suffering; punitive damages; prejudgment interest; attorney's

fees and costs, as well as any other relief deemed proper under the circumstances by the Court or the jury.

DATED this 4th day of January, 2011.

          TOWE LAW OFFICES

          By: /s/ James T. Towe
             James T. Towe
             502 W. Spruce Street
             Missoula, MT 59802
             jamiet@montanadsl.net
             (406) 829-1669

## **DEMAND FOR JURY TRIAL**

Plaintiff, Norm Brown, requests a trial by jury on all issues in this case.

DATED this 4th day of January, 2011.

          TOWE LAW OFFICES

          By: /s/ James T. Towe
             James T. Towe
             502 W. Spruce Street
             Missoula, MT 59802
             jamiet@montanadsl.net
             (406) 829-1669